## COBB v. BERRY.

No. 9054—Opinion Filed June 19, 1917.

Rehearing Denied Oct. 23, 1917.

(168 Pac. 46.)

(Syllabus.)

1. **Elections—Correctness of Precinct Vote —Prima Facie Evidence.**

A count of ballots cast at an election by the counters of the precinct out of the view of the election officers, and an unverified return thereof, is not prima facie evidence of the correctness of the precinct vote

2. **Same—Contest—Recount.**

Where, in an election contest, on a recount of the ballots of an election precinct, it appears that part of the genuine ballots have been removed from the box and spurious ones substituted therefor, the recount should be entirely rejected, and not merely the count of the spurious ballots.

**3. Same — Vote of Precinct — Secondary Evidence.**

When the returns of the vote of a precinct are not such as to constitute prima facie evidence, and the ballots have been tampered with so that a recount cannot be had and the correct vote determined thereby, resort may be had to secondary evidence to determine the vote of the precinct.

**4. Same—Precinct Returns—Fraud—Proof.**

In the absence of fraud, the value of the precinct returns of an election as prima facie evidence is not destroyed by showing that the total votes returned as having been cast for the candidates for a particular office are two more than there were ballots used by electors participating in the election, so as to put the party claiming any benefit from the votes at such precinct to other proof thereof, especially where such discrepancy is not sufficient to affect the result.

**5. Same—Contest — Precinct Returns—Rejection—Burden of Proof.**

In an election contest for the office of county commissioner, it appeared that after the boundaries of an election precinct had been established the boundaries of the commissioner's district were altered so that a part of the territory of such election precinct was left within and part placed without the district. Thirty persons residing in the election precinct, but without the commissioner's district, were, without fraudulent intent, permitted to participate in the election and voted for some one of the candidates for commissioner of the district in which they did not then reside. The successful candidate received a plurality of less than the number of the illegal votes cast. Held, not sufficient cause for rejecting the entire returns of the precinct. Held, further, the burden was on the contestant to prove that a sufficient number of the illegal votes were cast for the successful candidate to overcome his plurality on the face of the returns and change the result.

Error from District Court, Creek County; Geo. W. Clark, Assigned Judge.

Proceeding by John Berry against J. H. N. Cobb to cancel an election certificate issued to defendant and to have plaintiff declared elected to the office of county commissioner of the first commissioner's district of Creek county. Judgment for plaintiff ousting defendant from office, and defendant brings error. Reversed, and cause remanded with instructions.

McDougal, Lytle & Allen, for plaintiff in error.

Burford, Robertson & Hoffman, and Robertson, Robertson & Braden, for defendant in error.

MILEY, J. The parties hereto and one other were the candidates for the office of county commissioner from the First commissioner's district of Creek county, at the general election held November 7, 1916. Upon canvass of the face of the returns of all of the election precincts of the district, the county election board found that plaintiff in error had received 1,282 votes, the defendant in error 1,255, and the third candidate a less number, and thereupon awarded the certificate of election to plaintiff in error. This proceeding was commenced in the court below by defendant in error as plaintiff against plaintiff in error as defendant therein to cancel the election certificate, and to have defendant in error adjudged elected to said office. The parties will hereinafter be referred to as they were in the district court.

The plaintiff obtained judgment as prayed, and also ousting defendant from the office, he having taken possession thereof subsequent to the commencement of the action.

At the trial, the returns from all of the election precincts, as canvassed by the county election board, except three were conceded to be correct. The total votes in these precincts admitted to be true were 1,106 for plaintiff, and 1,082 for defendant. The correctness of the returns from one of the three remaining precincts was challenged by defendant. Upon the face of the returns therefrom plaintiff received 73 votes and defendant 34 votes. The trial court held that the evidence was not sufficient to overcome the presumption of the regularity and validity of the election in that precinct, or the presumption of the correctness of the returns therefrom, and allowed the returns to stand. In view of the conclusion we have reached, it will serve no useful purpose to review the evidence upon which this finding was based. It is sufficient to say that we think the conclusion of the trial court as to returns from this precinct is correct. Adding the votes received by each of the parties in this precinct to the totals above stated gives the plaintiff 1,179 votes, and the defendant 1,116.

The returns from Sapulpa No. 10, one of the precincts challenged by the plaintiff, as canvassed by the county election board, gave the plaintiff 60 votes and the defendant 103. The evidence disclosed that the count of the ballots cast at this precinct was conducted during a large part of the time out of the view of the officers of the election, contrary

to section 3082, Rev. Laws 1910, and also that the certificate of the counters of the total vote received by each candidate was not sworn to as required by section 3084, Rev. Laws 1910, as amended by Session Laws 1910-11, p. 227. This unverified return is not that which the statute provides shall be prima facie evidence of the correctness of precinct vote. Section 3084, supra. The trial court, we think, properly refused to consider and rejected the same. The plaintiff then offered in evidence the ballots cast at this precinct. The evidence at that time was probably sufficient to warrant the presumption that these ballots had not been tampered with, and were all of the original ballots actually received from the electors. A recount of these ballots gave the plaintiff 81 votes, the defendant 82 votes, and the third candidate 35 votes, which was 21 votes more for plaintiff and a like number less for defendant, than the returns canvassed by the county election board. The trial court, however, correctly found upon evidence subsequently introduced, and of the most convincing character, that at least 20 of the ballots so counted for plaintiff on the recount were spurious and had been substituted for a like number of genuine ballots removed by some unknown person and at some time subsequent to the election. The court thereupon subtracted 20 votes from the total for plaintiff, disclosed by the recount, leaving him 61 votes, and allowed the 82 votes, shown to have been received by the defendant on the recount, to stand as his correct vote in that precinct. In this, we think, the court erred. The ballots having been tampered with, they were not evidence of the votes actually cast, and the recount should have been entirely rejected. Rhode v. Steinmetz, 25 Colo. 308, 55 Pac. 814. The action of the court in the premises took no account of the wishes of 20 qualified voters as to this office. They should not be deprived of their votes by this theft of their ballots if it is possible to determine how they were cast. The certificate of the returns not having been executed as required by law, and the ballots having been changed and tampered with, secondary evidence was admissible and should have been considered as to the total votes cast for each candidate in that precinct. Moss v. Hunt, 40 Okla. 20, 135 Pac. 282. This the court had before it in the testimony of the four counters, the inspector, and the clerk. From their uncontradicted testimony we believe that an honest count of the ballots actually cast was made by them, and the result which they attempted to certify and return was the true vote received by the respective candidates. Adding the same to the totals previously stated gives the plaintiff 1,239 votes and the defendant 1,219 votes.

The only remaining precinct is Euchee No. 2, the returns from which were questioned by the plaintiff. The returns from that election precinct, being properly certified, were prima facie evidence of the correctness of the precinct vote. Section 3084, supra. That return gave plaintiff 16 votes, the defendant 63, and the third candidate 19, a total of 98 votes. This, if added to the totals of all the other precincts, will give the defendant a plurality of 27 votes over the plaintiff, or, under the findings and conclusions of the court below as to the result in Sapulpa No. 10, a plurality for defendant of 7 votes. The court below, however, rejected and refused to consider the entire returns from this precinct. It appears that he did this for the reason, in part at least, that the evidence disclosed that only 96 ballots were issued to electors at that precinct, and there could not have been cast a total of 98 votes for commissioner; hence he concluded the return was thereby shown to be incorrect and unreliable. There was no evidence whatever, the court did not find, nor does it appear to be claimed by plaintiff that this discrepancy was occasioned by fraud of the officers of the election, the candidates, the electors, or any one else, but the conclusion is irresistible from the evidence that it was the result of an unintentional error in tabulating the votes. By a recount of the ballots this slight mistake could have been corrected. The ballots were not introduced in evidence and recounted, and no reason is assigned why this was not done. However, it is not reasonable to suppose that a recount would have changed the votes received by each party sufficiently to have affected the result. If the excess over the total votes cast are all deducted from the total vote of the defendant, he would yet have a plurality even under the findings and conclusions of the trial court as to Sapulpa No. 10. There is no good reason for rejecting the returns of the precinct for this slight excess, most likely a mere clerical error, which cannot possibly affect the result. We do not think that the discrepancy is in itself evidence of fraud on the part of the election officers, or sufficient to destroy confidence in their official acts, and to put the party claiming anything under the election conducted by them to the proof of his votes by evidence other than the return. McCrary on Elections (4th Ed.) § 576; Judkins v. Hill, 50 N. H. 140.

The evidence further disclosed that, after the boundaries of this election precinct had been established and some time before the election, the boundaries of commissioner's district No. 1 were changed so that part of the territory of Euchee Election Precinct No. 2 was within and part without this commissioner's district. The trial court found from the evidence that 30 electors residing in the election precinct, but without the commissioner's district, voted at the election, many of whom it was proven voted for a candidate for commissioner, but for what particular candidate was not attempted to be shown. The right of these electors to participate in the election of a commissioner from this district was not challenged or called in question in any way until after the election. It does not appear that they marked their ballots for a candidate for commissioner, or that the same were received by the election officials with fraudulent intent; but rather that their participation was an innocent mistake on the part of all concerned, and probably in ignorance of the effect in the change of boundaries, if the change was in fact known, on their right to vote for commissioner.

It may be conceded that all of the 30 persons not entitled to do so did vote for a candidate for commissioner. It will be noted that this number exceeds the plurality received by the defendant on the face of the returns. The record does not disclose how many, if any, of these persons voted for defendant. It was not made to appear that proof of that fact was impossible. Although the plaintiff called many of these voters as witnesses and proved by them the exact place of their residence, and that they voted for a candidate for commissioner, he made no inquiry as to whether they voted for defendant. One witness volunteered a statement as to the party ticket he voted, which was stricken out on motion of plaintiff. No attempt was made to show that any of the unqualified voters were of the political party of which defendant was the candidate, or that he or his partisans procured their presence at the polls. The fact that unqualified persons voted at the election in this precinct does not constitute sufficient grounds for rejecting the returns therefrom, in the absence of proof that such voting was done fraudulently, and that it would be impossible to determine for whom these votes were cast. The Law of Elections, Paine, § 510; McCrary on Elections (4th Ed.) §§ 569, 581.

The plaintiff contends, however, that, upon proof that the number of illegal votes exceeded the plurality of defendant, the burden of proof shifted to him to show that he did not receive a sufficient number of these votes to overcome his plurality. While there are authorities to support that proposition, yet we do not think it the correct rule. McCrary on Elections (4th Ed.) § 496. The rule announced and followed by this court is that the burden is on the contestant to show, not only that illegal votes were cast in sufficient numbers to change the result, but also for whom such votes were cast. Dunagan v. Town of Red Rock, 58 Okla. 218, 158 Pac. 1170.

The burden of proof was on the plaintiff to establish by a preponderance of the evidence that he, and not defendant, was elected to the office, by showing that he received a plurality of the legal votes cast. To hold that the burden was on the defendant to prove that the illegal votes were cast for plaintiff, or the other candidate, would be to presume that they were cast for defendant. The presumption is not warranted under the facts of this case. Under the circumstances in evidence, it is as probable that plaintiff and the other candidates received some part of the illegal votes, as that defendant did.

Some courts have adopted the rule, where it is impossible to determine for whom the illegal votes were cast, of deducting from the vote of each candidate such proportion of the illegal votes as the vote returned for the candidate bears to the total cast. If that rule should be applied here, the defendant would yet have a plurality.

The trial court erred in rejecting and refusing to consider the returns from this precinct. As before stated, the return of the votes from that precinct added to the votes received by the parties in the other election precincts gave defendant a plurality. The plaintiff not having proved that the defendant received a sufficient number of the votes of the unqualified voters to change the result, judgment should not have been rendered for plaintiff, but should have been, under the uncontradicted evidence and facts found, for defendant.

The judgment is reversed and the cause is remanded, with directions to render judgment according to the views herein expressed.

All the Justices concur, except KANE, J., absent.