### KEITHLEY v. HANEY.

No. 27280. June 15, 1937.

Anglin & Stevenson and Vernon Roberts, for plaintiff in error.

Pryor & Sandlin, for defendant in error.

PHELPS, J. Section 6798 of O. S. 1931 provides that the officers of each school district shall be a director and a clerk and a member. These three constitute the district board. The terms of the members are three years, but do not run concurrently, and one new member is therefore elected at each annual meeting of the school district, pursuant to that section. Section 6786 directs that an annual school meeting of each school district shall be held on the last Tuesday in March of each year. Pursuant thereto, on March 31, 1936, the required notices having been posted, the annual school district meeting and election of Lamar consolidated school district No. 4 of Hughes county was held.

A member was to be elected at this meeting. At that time the defendant was a member of said board and was running for re-election. His opposing candidate was the plaintiff. The director of the board favored the re-election of the defendant. The clerk of the board favored the election of the plaintiff. It appears that a rather strenuous campaign had been waged by both candidates, and there was much interest manifested in the election by the voters.

The meeting was held in a school room. There was a table at one end of the school room where the balloting occurred. Behind it sat the clerk, who apparently presided over the meeting. The director also sat at the table, and placed the ballot box, which was an ordinary shoe box, on the floor at his feet. As stated above, the clerk and the director of the board were supporting opposing candidates. The clerk protested at the director's placing the ballot box at his feet, and accordingly it was placed on the table, where the director then complained that it obstructed his view. The clerk then placed it on the opposite corner of the table, where it remained.

The voting was by means of secret written ballot, and the ballots used were of several different kinds, being the remaining blank ballots from previous elections. When the voting was completed the counting of the ballots was started. The director opened the ballot box, took a ballot at a time therefrom, and called the vote thereon. It was recorded by two counters, on an ordinary school pad, and also by the clerk. At one time during the count the two counters were not in accord on the number of votes. There was a difference of one vote between them. However, the error was discovered and corrected, and the counting proceeded, and at the termination thereof the vote stood 144 for the plaintiff and 142 for the defendant. The clerk arose and announced that the plaintiff was elected. The director, whose candidate apparently had lost the election, then picked up the open wastebasket into which the counted ballots had been thrown, and handed it to another man, with directions to dispose of them. At this time it is pertinent to observe that when the director testified at the trial, he stated that when he handed the wastebasket to the other man for the purpose of disposing of the used ballots, he expected there to be a recount. The man to whom he had passed the ballots proceeded toward the rear of the room a short distance, and at that place he handed the wastebasket to another, and eventually it was placed in the open coal bin at the rear of the room, or the ballots were emptied out of the wastebasket and scattered into said bin.

Four witnesses testified that during the time when the director had hold of the wastebasket and before he delivered it to the next man, he took from his pocket and placed in said basket, two or more pieces of paper resembling ballots. They did not, however, make this known at the meeting.

Shortly after the ballots were deposited in the coal bin the defendant announced that there had been some illegal votes which he desired to challenge. We have read the entire record and have been unable to obtain any information concerning the procedure which was had on the question of the allegedly illegal votes. That question appears to have been dropped. Considerable wrangling, lasting over a period of probably an hour, took place at that time.

There were possibly 100 people in the room, and the only illumination was a gasoline lamp which was sitting on the table, and the people milling around in front of this lamp cast a shadow over the rear of the room, wherein sat the coal bin with the ballots in it. During all of that time said ballots were open to molestation by any person having that inclination. One boy testified that he picked up one of the ballots, and when the commotion started in the front of the room he put it in his pocket and, it appears, forgot about it. He produced it on the trial of the case and it was in favor of plaintiff, who had prevailed on the first count.

Another boy testified that he picked up one of the ballots, tore off a part of it, and rolled a cigarette in it, and smoked the cigarette. He did not know which candidate that ballot had been cast for.

After all of the foregoing the idea occurred to the clerk that they recount the ballots in order to determine the controversy. She then made that suggestion and the ballots were retrieved from the coal bin and recounted, with the result that on the second count the vote stood 143 for the plaintiff and 143 for the defendant. Under the rules applicable to review, the trial court was authorized from the evidence to believe that the director had dropped some papers, possibly forged ballots, into the wastebasket, and that the testimony of the boys narrated above was true. The defendant points out that the sum of the ballots on both counts was the same, but this is not of major importance, since the reliability of any method of correction would depend on how many ballots, if any, the director had dropped into the wastebasket, and how many ballots, and who they were for, disappeared while the ballots were in the rear of the room.

The vote being a tie, and the defendant being the incumbent, the clerk then announced that the defendant was elected, having consulted a pamplet entitled "School Laws of Oklahoma, 1935" by the State Superintendent of Public Instruction, wherein an opinion of the Attorney General was cited, bearing date of April 13, 1923, in which the Attorney General stated that in such case the incumbent would hold over until the next regular election. It does not appear that that question has been decided by this court, and it is unnecessary to decide it in this opinion.

There was testimony that both the plaintiff and defendant signed oaths of office, but the defendant actively entered upon the duties of the office and probably was certified to the county superintendent of public instruction as the successful candidate, under the provisions of section 6808, O. S. 1931. No statute is called to our attention concerning a certificate of election in such case, and there is no evidence in the record on the question.

Plaintiff then brought this action in the nature of quo warranto, to try title to the office. The plaintiff prevailed, the trial judge remarking:

"I wish I knew some way to satisfy these people and get them back together. That school is more important than any of these individuals. Here is an election nearly fifty-fifty. The vote is very, very close together, and the voters evenly divided, as evidenced by the crowd that visits this trial. Great interest is being taken. No matter which way I decide this case, somebody will be disappointed, but it appears to be my official duty to decide it, and I am going to try and make the right sort of guess. In my opinion, the election was held and a candidate elected when the votes were cast and counted and the result declared—that ended it. The ballots were taken back in the back of the house out of the custody of the proper officials. I do not know whether anything happened there or not, but I cannot approve of that sort of thing in an election as a public official. Therefore, it will be the judgment of the court that the first count was the correct count and the man that got the 144 votes declared elected."

The defendant in appealing puts the following questions:

"1. Did the school officials have the right to recount the ballots to test the accuracy of the first count under the conditions as disclosed by the evidence in the case?

"2. Were the ballots properly protected between the first and second counts?

"3. The plaintiff and defendant both being present and agreeing to the count, or at least failing to object to the recount, and after having expressed themselves as being satisfied with the result of the count, can they be heard thereafter to complain of the result?"

We think that in answer to the first question above, for the reasons hereinafter stated, the school officials would have the right to recount the ballots under ordinary circumstances, but "under the conditions as disclosed by the evidence" the question is whether there was anything valid upon which the recount could operate. The second question must obviously be answered in the negative. The third question will be considered later.

The argument of the defendant appears generally and in substance to be predicated upon the assumption that on account of the inapplicability of the general election laws to the elections held at school district meetings, any result reached at such a meeting is binding on the candidates. The defendant is only partly correct in this. It is true that the general election laws do not apply (Beatty v.

Walker, 1 Okla. 178, 32 P. 53), and we held in McCarter v. Spears, 157 Okla. 168, 11 P. (2d) 489, that if the voters at such a meeting so desire, they may legally elect a member of the board by acclamation, instead of written ballot.

But we must remember that section 6798, O. S. 1931, regardless of the amount of latitude permissible in the conduct of such elections, does after all provide that the officers "shall be elected", and all sections of the statute dealing with the question do contemplate that an election be held. Notice of the time and place of said annual meeting is required to be posted by the clerk for ten days prior to said meeting, by section 6786. Section 6787 prescribes the qualifications of the voters. Section 6788 provides for the method of challenge. Section 6798 provides, among other things, that one member "shall be elected" at the election. By section 6808 the district clerk is required to make a report to the county superintendent of public instruction as to the name and post office address of the officer elected at the annual meeting. There can be no doubt that an "election" is required. In other words, the officer is elected by the qualified popular vote, and not by arbitrary selection of those in charge of the meeting. Therefore the informality of the procedure has its limitations.

Having come to the conclusion that, loose as the requirements may be, nevertheless they do require an election, it then becomes necessary to determine whether the defendant took office as the result of an election, or merely as the aftermath of an election. We have not been cited to any controlling case, nor have we found a decision involving facts similar to those of the instant case. We are therefore to be guided by the general principles of law which are applicable to the situation.

The trial court's opinion in announcing judgment does not constitute a finding of fact and may not be considered as such, or to vary the judgment of the court as contained in the journal entry. Rogers v. Harris, 76 Okla. 215, 184 P. 459. The trial court stated that he did not know what happened to the ballots "in the back part of the house," but he made no remark concerning the evidence as to the director's dropping of papers in the basket, so that even if it were not for the foregoing rule, we would still be bound by the rule that in a civil action, triable to the court, where its finding is general, it is a finding of each special thing necessary to sustain the general finding (Deskins v. Rogers, 72 Okla. 274, 180 P. 691), and however the matter is looked at, from the appellate viewpoint we must of course assume that the director dropped the extraneous ballots into the basket, and we must further assume that at least two ballots were extracted therefrom before the recount, and we must also recognize the fact that the ballots for a considerable while lay exposed to the hands of any person who desired to tamper with them. The placing of spurious ballots in a ballot box is fraud, and it cannot be denied that there was some evidence thereof, even though in part circumstantial. There are few instances of fraud which may not be remedied by a court of equity. The aim of the law is to provide a remedy for every wrong, if possible. The position involved is that of an important public official; important, at least, to the district involved, and especially to the welfare and education of the children therein.

The evidence is undisputed that the plaintiff won the election in so far as the first count is concerned. It is not contended that any fraud attended that count. The discrepancy between the figures of the two counters which occurred during the first count was corrected, and they were agreed at the end of the count. As stated supra, there is no question of unqualified voters involved, since apparently the contemplated challenges were abandoned. We do not say that had the authorities desired to recheck and recount they could not have done so, that is, if the count had been conducted upon the ballots as they existed at the close of the polls.

But the evidence is overwhelmingly to the effect that such state of facts did not exist. There could not be a recount in any event, in contemplation of the law, in the absence of a valid thing for the recount to operate upon. We cannot hold that the collection of papers which were returned from the coal bin, under the facts of this case, were the proper subject of a valid count. Nor do we think that it can reasonably be argued that the selection of important public officials should be determined from such an unreliable source of information as was this wastebasket when it was returned from the coal bin. According to the law and universal usage the one of two candidates elected is the candidate receiving the greater number of votes. How is it to be

determined who received the greater number of votes? The only reliable test of that question in this case occurred in the first count, following which it was announced that the plaintiff was elected. The second count can no more be said to be correct, or to reflect the true choice of the voters, than the same could be said in a case where the ballot box had admittedly been stuffed with illegal ballots. We think that the common sense view of this situation was taken by the trial judge. Furthermore, any contrary holding would have encouraged repetitions of the questionable procedure involved in this case, and therefore would have been an encouragement to fraud.

Though the general election laws are not applicable to the case of a school district election, some of the same abstract principles which are applicable to the general elections are also applicable to the particular question involved in this case. Regardless of what kind of an election it is, the principles of fair play and square dealing should prevail. There is no reason why actual fraud should not vitiate this kind of an election as well as a general election. In Cobb v. Berry, 67 Okla. 29, 168 P. 46, involving a general election, we said in the second syllabus:

"Where, in an election contest, on a recount of the ballots of an election precinct, it appears that part of the genuine ballots have been removed from the box and spurious ones substituted therefor, the recount should be entirely rejected, and not merely the count of the spurious ballots."

While school meetings are not required to be conducted in accordance with strict parliamentary rules (Reeves v. Ryder, 91 Kan. 639, 138 P. 592), nevertheless fair play, frankness, and liberality should characterize such meetings. 56 C. J. 356; State v. Woolem, 39 Iowa, 380. The judgment pronounced by the trial court, and as affirmed herein, could not but have a salutary effect upon the conduct of such elections, while the opposite judgment may have encouraged the perpetration of election frauds in such cases.

The defendant further presents the argument, as announced above in his 3rd question. that "the plaintiff and defendant both being present and agreeing to the count, or at least failing to object to the recount, and after having expressed themselves as being satisfied with the result of the count, can they be heard thereafter to complain of the result?" and cites certain dictum in McCarter v. Spears, supra.

This question at least in part presupposes a fact which is not evidenced · by the record. The plaintiff testified that he did not agree to the results of the recount, or that in substance. Even had the plaintiff expressed himself as being satisfied with the result of the recount, still could it be said that he thereby estopped himself from later asserting the invalidity of said recount by reason of some fraud unknown to him at the time? We think that this question almost answers itself. Were we · to lay down such a rule, we would thereby impose upon every losing contestant, in every school district election, the onerous duty of objecting to the count, else he could not later take advantage of fraud which was unknown to him at the time. Furthermore, there is no provision of statute requiring the lodging of any such protest as a condition precedent to relief at the hands of a court of equity. This contention must therefore be denied.

The judgment is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, WELCH, CORN, and HURST, JJ., concur. BUSBY, J., absent. GIBSON, J., dissents.